STATE OF NORTH CAROLINA v. CLIVE HURST

No. COA96-802

(Filed 5 August 1997)

1. **Evidence and Witnesses § 1009 (NCI4th)— murder and other drug related crimes—recorded statement—deceased witness to planning of crime—statement admissible**

There was no prejudicial error in a noncapital prosecution for first-degree murder, breaking or entering, and other crimes in admitting a recorded oral statement from the deceased girlfriend of a participant where the girlfriend gave the recorded statement to police after being booked on unrelated drug charges; she indicated that defendant and others, including her boyfriend, had conceived a plan to break into the victim's house, steal cocaine, and kill the victim and her boyfriend; her body was found in New York City several months after giving this statement; and defendant contended that the statement lacked the inherent trustworthiness for admission under N.C.G.S. § 8C-1, Rule 804(b)(5). The girlfriend's unavailability was firmly established, the trial court found that the recorded oral statement was trustworthy, and the court's findings are supported by the evidence. She had personal knowledge of the plan; it was reasonable for the court to infer that she was motivated to speak the truth by her predicament; she never recanted or altered the statement; and she admitted participating in illegal drug trafficking. Although the court erred in detailing corroborating evidence in its findings of fact, it did not err in concluding that her statement was inherently trustworthy. Furthermore, defendant's participation in the robbery and murder was established by other evidence, including his own statement.

**2. Evidence and Witnesses § 862 (NCI4th)— murder and other crimes—recorded statement of girlfriend of participant—offered to establish defendant's participation in planning—admissible**

The trial court did not err in a prosecution for noncapital first-degree murder, breaking or entering, and other crimes in admitting the recorded oral statement of the since deceased girlfriend of one of the participants where defendant contended that the statement contained the hearsay statements of two codefendants which do not fall under any recognized exception to the hearsay rule. Statements made by codefendants offered to establish the defendant's participation in the planning of a crime are not offered for the truth of the matter asserted.

**3. Evidence and Witnesses § 2088 (NCI4th)— murder and other crimes—recorded statement of deceased witness—defendant's intent—excluded**

The trial court did not err in a prosecution for noncapital first-degree murder, breaking or entering, and other crimes by admitting the recorded oral statement of the since deceased girlfriend of one of the participants but precluding admission of an exculpatory portion of the statement. The omitted portion of the statement is not a description of defendant's emotional response to the plan to kill the victim, but a statement of the witness's opinion that defendant may not have originally intended to participate in the plan. Furthermore, other evidence admitted at defendant's trial, including his own statement, established his willing participation in the plan to rob and kill the victim.

Appeal by defendant from judgments entered 7 February 1996 by Judge Orlando F. Hudson in Durham County Superior Court. Heard in the Court of Appeals 1 April 1997.

Beverly Drakeford was shot and killed outside her home in Durham, North Carolina on 16 October 1994. She was returning from New York with her adult sister Dedra, her nine year old brother, and her two children. Beverly had driven her boyfriend "Kool-Aid's" Toyota Cressida automobile to New York. When the family returned home to Durham, Beverly parked the Toyota in the driveway and gathered the children together to go inside the house. When Beverly and the children entered the house, they encountered four men later identified as the defendant, "Loopo" (whose real name was Somohora

Mussa), "Gillie" a/k/a "Black" (whose real name is Anthony Hibbert), and a man known as "Sam," "Jay" or "Junker" (whose real name is Kadio Sumual). Beverly called out "[i]t's Loopo," then grabbed the three children and ran out the front of the house, instructing the children to run to a neighbor's house. Dedra ran and crouched by the driver's side door of the Toyota. From this location Dedra heard a "tear(ing) sound" which sounded like the opening of a window which had been painted shut, then she heard a "phffff" sound and saw a "little spark of light." Dedra looked up and saw Beverly standing in the front yard holding her neck and Loopo standing at the side entrance, staring out a door that had previously been nailed shut. Dedra then heard "someone ask(ing) him (Loopo) did he shoot her."

The four men approached Dedra and asked for the keys to the Toyota. Loopo stood over Dedra as she was crouching by the car. She pleaded "[p]lease, don't shoot me" and one of the other men, identified by Dedra as the man "with braids in his head," told Dedra "[n]obody is going to shoot you." Meanwhile, another of the four men found the car keys in the yard and the four men fled together in the Toyota.

After Loopo and the three other men got into the Toyota, Dedra ran up the street in search of Beverly. Beverly had been shot several times in the back and in the back of her head and had collapsed at a pole at the end of the driveway. Dedra was the first person to reach Beverly after the shooting. After calling Dedra's name several times, Beverly died at the scene.

All four men left the scene in the Toyota and drove to Loopo's Volkswagen Jetta. Gillie and the defendant got into the Jetta and Loopo and Jay followed in the Toyota. They later abandoned the Toyota and Jay and Loopo rejoined the defendant and Gillie in the Jetta. Officer Johnson sighted the four suspects in his patrol area and activated his lights and siren and followed the Jetta. The Jetta sped away with Officer Johnson and Officer Irving, a K-9 officer dispatched to the area with his dog, in pursuit. The Jetta came to an abrupt stop and three men got out and ran. Officer Johnson apprehended Gillie near the car. Loopo and the defendant ran for a fence. Loopo climbed over the fence and ran away but the defendant was apprehended by Officer Irving and his dog. Officer Irving's dog continued pursuing Loopo but failed to catch him. The dog then led officers to a bag containing an UZI automatic weapon and other evidence located on the other side of the fence where Loopo was last seen.

STATE v. HURST

[127 N.C. App. 54 (1997)]

Near the Jetta, a resident told Officer Irving that during his capture of the defendant and Gillie, a fourth man ran out of the car and down the street. That man, Jay, was found later hiding in a storage building. Evidence found in and around both cars included an UZI automatic weapon, a semiautomatic pistol, 1156 grams of crack cocaine, and cocaine processing materials.

Dedra identified Loopo from a photo line-up but was not able to identify the defendant or the other two men involved in the robbery and the shooting. Dedra was able to describe one of the men as having "braids in his head." The defendant wore his hair in dread locks at the time of the murder and the three other men wore their hair short.

While being booked on unrelated drug charges on 18 October 1994, Loopo's former girlfriend, Roneka Jackson, gave a short statement to police indicating that she had information about Beverly Drakeford's death. On 13 March 1995, Durham Police Investigator Early interviewed Roneka Jackson. Ms. Jackson told Investigator Early, in a tape recorded statement, that the defendant, Loopo, Gillie and Jay met in early October 1994 and conceived a plan to break into Beverly's house, steal cocaine, and kill Beverly and her boyfriend, "Kool-Aid." Roneka Jackson's stabbed and burned body was found in a dumpster in New York City several months after giving this statement to police.

After the defendant was taken into custody on 16 October 1994, he was interviewed by Investigator Early at 9:04 p.m. In his written statement, the defendant admitted that he went to Beverly Drakeford's house with Loopo, Gillie, and Jay but stated he was not aware of any plan to kill and rob Beverly Drakeford or "Kool-Aid." The defendant gave another statement to the police at 11:25 p.m. In his second statement he told police that he and the other three men waited in Beverly Drakeford's house for over four hours but that he was in the bathroom when Beverly returned home. According to his second statement, the defendant heard a gunshot but "did not see who did the shooting." He told police that he and Jay did not want to leave with Gillie and Loopo but "they had a gun waving it at us."

On 7 November 1994, the defendant was indicted on one count of first degree murder, one count of felonious breaking and entering, one count of felonious larceny, one count of possession of stolen goods, one count of trafficking by possession of Schedule II-cocaine, one count of possession with intent to sell and deliver Schedule II-cocaine, and one count of felonious possession of cocaine. On 1

February 1995, the State gave notice that it planned to prosecute the first degree murder charge as a non-capital felony. The defendant was tried at the 29 January 1996 criminal session of Durham County Superior Court, Judge Orlando F. Hudson presiding. The trial court dismissed the charge of possession of stolen goods at the close of the State's evidence. The defendant offered no evidence at trial. The jury convicted the defendant of non-capital first degree murder, felonious breaking and entering, trafficking in cocaine by possession, and possession of cocaine with intent to sell and deliver. On 7 February 1996, the trial judge sentenced the defendant to life imprisonment without parole on the charges of first degree murder and felonious breaking and entering, which merged with the murder charge for sentencing, and 12 to 15 months imprisonment to be served consecutively on the combined charges of trafficking in cocaine by possession and possession of cocaine with intent to sell and deliver. The defendant appealed.

*Attorney General Michael F. Easley, by Assistant Attorney General Marilyn R. Mudge, for the State.*

*Brian Michael Aus for the defendant-appellant.*

EAGLES, Judge.

[1] The defendant argues that the trial court erred in admitting the statement of Roneka Jackson. First, the defendant contends that the trial court erred in admitting the hearsay testimony of Roneka Jackson "pursuant to N.C.G.S. §8C-1, Rule 804(b)5," which was in the form of an out-of-court recorded oral statement given to a police investigator. The defendant argues that the statement lacks the inherent trustworthiness necessary for admission under Rule 804(b)(5), and therefore admission of the statement violated defendant's constitutional right to confront a witness, based on the Sixth Amendment of the United States Constitution and Article I, § 23 of the North Carolina Constitution.

Rule 804(b)(5) provides:

(b) *Hearsay Exceptions.*—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(5) Other Exceptions.—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that, (A) the statement is offered as evidence of a material fact;

(B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. . . .

N.C.G.S. 8C-1, Rule 804(b)(5) (1992).

To admit hearsay testimony under Rule 804(b)(5), the trial court must first find that the declarant is unavailable. *State v. Peterson*, 337 N.C. 384, 391, 446 S.E.2d 43, 48 (1994). Roneka Jackson's unavailability was firmly established by Investigator Early's testimony that Roneka Jackson was deceased at the time of trial. After confirming the witness's unavailability, the trial court must undertake a six-step inquiry to determine the admissibility of the unavailable declarant's statement. *Id.* The trial court must determine:

(1) Whether the proponent of the hearsay provided proper notice to the adverse party of his intent to offer it and its particulars;

(2) That the statement is not covered by any of the exceptions listed in Rule 804(b)(1)-(4);

(3) That the statement possesses 'equivalent circumstantial guarantees of trustworthiness';

(4) That the proffered statement is offered as evidence of a material fact;

(5) Whether the hearsay is 'more probative on the point for which it is offered than any other evidence which the proponent can produce through reasonable means'; and

(6) Whether 'the general purpose of the rules of evidence and the interests of justice will best be served by admission of the statement into evidence.'

*State v. Peterson*, 337 N.C. *at* 391-92, 446 S.E.2d *at* 48 (quoting *State v. Triplett*, 316 N.C. 1, 9, 340 S.E.2d 736, 741 (1986)). To satisfy the two-prong constitutional test of necessity and trustworthiness for the admission of hearsay under the confrontation clause, "the trial court is required to make both findings of fact and conclusions of law on the issues of trustworthiness and probativeness." *State v. Peterson*, 337 N.C. *at* 392, 446 S.E.2d *at* 48. The ruling of the trial judge will not be disturbed unless the findings of fact are not supported by competent evidence or the law is erroneously applied. *Id.*

Here, the defendant challenges the trial court's determination that Roneka Jackson's statement "is trustworthy" and admissible into evidence under Rule 804(b)(5). Because Rule 804(b)(5) is a residual hearsay exception, "it does not inherently possess indicia of reliability." *Id.; Idaho v. Wright*, 497 U.S. 805, 817, 111 L.Ed.2d 638, 653-54 (1990). "However, a statement which falls under the residual hearsay exception can meet Confrontation Clause standards if it is supported by particularized guarantees of trustworthiness based on the totality of the circumstances surrounding the making of the statement." *State v. Peterson*, 337 N.C. *at* 392, 446 S.E.2d *at* 49. The trial court should consider four factors in determining whether a hearsay statement possesses the required guarantees of trustworthiness; "(1) assurances of the declarant's personal knowledge of the underlying events, (2) the declarant's motivation to speak the truth or otherwise, (3) whether the declarant has ever recanted the statement, and (4) the practical availability of the declarant at trial for meaningful cross examination." *State v. Triplett*, 316 N.C. 1, 10-11, 340 S.E.2d 736, 742 (1986).

Here, the trial court found that Roneka Jackson's recorded oral statement was trustworthy. The trial court's findings are well supported by the evidence. Roneka Jackson told Investigator Early about the particulars of a plan to rob and kill Beverly Drakeford and her boyfriend "Kool-Aid." According to Ms. Jackson, Loopo, Gillie, Jay and the defendant discussed this plan while at her apartment in early October. She was Loopo's former girlfriend and Loopo, Jay and the defendant lived in her apartment. The defendant admits to having been at Ms. Jackson's apartment prior to the murder and admits to planning to return to her apartment after the murder. Ms. Jackson had personal knowledge of the plan to rob and kill Beverly Drakeford. Furthermore, Ms. Jackson gave her statement to police while she was in custody on unrelated drug charges. It is reasonable for the court to infer that Ms. Jackson was motivated by her predicament to speak the truth. Also, although Ms. Jackson remained in police custody for "several months" following her statement, she never recanted or altered her March 1995 statement.

In determining whether a statement is trustworthy, courts have also considered "the degree to which the proffered testimony has elements of enumerated exceptions to the hearsay rule." *State v. Nichols*, 321 N.C. 616, 625, 365 S.E.2d 561, 567 (1988). In her statement, Ms. Jackson admitted that she and Beverly Drakeford "use to go to New York to pick up drugs and bring them back to Durham for

this Jamaican who was her boyfriend . . . Kool-Aid." Ms. Jackson's admission to police that she participated in illegal drug trafficking provided the indicia of reliability underlying the declaration against penal interest exception of Rule 804(b)(3). "[W]hen a statement nearly fits an enumerated exception it has a degree of circumstantial trustworthiness which is relevant to the ultimate determination the trial court must make." *Id.*

The trial court should not rely on corroborating evidence to support a hearsay statement's particularized guarantee of trust-worthiness. *State v. Tyler*, 346 N.C. 187, 485 S.E.2d 599 (1997). Findings of fact detailing corroborative evidence cannot be "relied upon in finding the circumstantial guarantees of trustworthiness required in order to protect the defendant's rights under the Confrontation Clause of the United States Constitution." *Id.* Here, as in *Tyler*, the trial court erred in detailing corroborating evidence in its findings of fact, but did not err in concluding that Ms. Jackson's statement was inherently trustworthy. This conclusion of law, which is fully reviewable on appeal, is supported by the evidence.

Furthermore, to obtain reversal based on any error in the trial court's ruling, the defendant must show prejudicial error. *State v. Brown*, 101 N.C. App. 71, 80, 398 S.E.2d 905, 910 (1990). The test for prejudicial error is "whether there is a reasonable possibility that a different result would have been reached at trial had the error not been committed." *Id.* The defendant has not shown any prejudice caused by the admission of Ms. Jackon's statement. The defendant's own statement to police established that he accompanied Loopo, Gillie, and Jay to Beverly Drakeford's home and waited for "several hours" until she returned. The defendant also told police that he was in the house when Beverly was shot and that he fled with Loopo, Gillie, and Jay in Beverly Drakeford's Toyota Cressida. Officer Irving testified that he apprehended the defendant as defendant and Loopo were climbing over a fence to escape police. The defendant's participation in the robbery and murder of Beverly Drakeford was established by other evidence. Defendant's assignment of error is overruled.

[2] The defendant next contends that Ms. Jackson's statement contained the hearsay statements of two co-defendants which do not fall under any recognized exception to the hearsay rule. Ms. Jackson's statement contains several statements attributed to Loopo and Gillie; "he would have to kill whoever that was in the house because he (Loopo) said he didn't want to have no witnesses or none of that," and

"Gillie was saying it 'cause at first, they was trying to get her coming off the highway . . . [t]hat's what was said . . . [b]ut then they was saying they was going to get her coming off the highway. . . ." Rule 805 provides that "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule. . . ." N.C.R. Evid. Rule 805 (1992). Rule 805 precludes the admission of statements within admissible hearsay statements that do not qualify independently for admission into evidence. The Rule 805 exclusion requirement does not apply when the second layer of statements are not hearsay.

The State argues that the statements of Loopo and Gillie contained in Ms. Jackson's statement were not offered for a hearsay purpose. According to the State, these statements were offered to establish the existence of a conversation between Loopo, Gillie, Jay and the defendant planning the robbery and murder of Beverly Drakeford. "If a statement is offered for any purpose other than that of proving the truth of the matter stated, it is not objectionable as hearsay." 1 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 141 (3d ed. 1988). Statements made by co-defendants offered to establish the defendant's participation in the planning of a crime are not offered for the truth of the matter asserted. *See* e.g., *State v. Allen*, 57 N.C. App. 256, 259, 291 S.E.2d 341, 343 (1982). The trial court did not err in admitting into evidence Ms. Jackson's complete statement, including the admissions of Loopo and Gillie. This assignment of error is overruled.

[3] The defendant next contends that the trial court erred in precluding admission of an exculpatory portion of Ms. Jackson's statement. The following portion of Ms. Jackson's statement was not presented to the jury:

> [T]hese two, Click-Click (the defendant) and Jay, they were like scary. They ain't really wanted to do it but the only reason why they did it because Gillie, he like a bully and he was bigger than them. So he, like I don't know if he made them do it or not cause I wasn't there. . . .

The trial court denied the defendant's request to admit this portion of Ms. Jackson's statement because "ultimately it is an opinion that she had (which) she didn't have any legal basis to give."

Rule 701 limits opinion testimony by lay witnesses to "those opinions or inferences which are (a) rationally based on the perception of

the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C.R. Evid. Rule 701 (1992). Although a lay witness may be allowed to testify as to his opinion of "the emotions (a person) displayed on a given occasion," a lay witness "may not give his opinion of another person's intention on a particular occasion." 1 Henry Brandis, Jr., *Brandis on North Carolina Evidence*, § 129 (3d ed. 1988). The omitted portion of Ms. Jackson's statement is not a description of the defendant's emotional response to the plan to kill Beverly Drakeford, but a statement of her opinion that the defendant may not have originally intended to participate in the plan. The trial court did not err in denying the defendant's request to admit this portion of Ms. Jackson's statement. Furthermore, other evidence admitted at the defendant's trial, including the defendant's own statement admitting his participation in the crime, establish the defendant's willing participation in the plan to rob and kill Beverly Drakeford.

After a careful review of the record, we conclude that the defendant received a trial free of any prejudicial error.

No error.

Judges WALKER and MARTIN, Mark D., concur.