An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-40

Filed 5 November 2025

Moore County, No. 17CR051809-620

STATE OF NORTH CAROLINA

v.

ADAM LEE MCREE, aka Kevin Keith Vaughn, Defendant.

Appeal by Defendant from judgment entered 28 April 2023 by Judge James M. Webb in Moore County Superior Court. Heard in the Court of Appeals 13 August 2024.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Michael T. Henry, for the State.*

> *Marilyn G. Ozer, for Defendant-Appellant.*

CARPENTER, Judge.

Adam Lee McRee ("Defendant") appeals from judgment entered after a jury found him guilty of one count of first-degree murder. Defendant argues: (1) the trial court erred by failing to rule on the admissibility of a police interview video after the first ten minutes of the video; (2) the trial court erred by overruling Defendant's objection to certain statements made by a witness in the police interview video; (3)

the trial court erred by failing to declare a mistrial *ex mero motu* after inadmissible statements in the police interview video were played to the jury; and (4) Defendant received ineffective assistance of counsel ("IAC"). After careful review, we find no prejudicial error in part and dismiss Defendant's IAC claim without prejudice to Defendant's right to file a motion for appropriate relief ("MAR").

## I. Factual & Procedural Background

On 21 August 2017, a Moore County grand jury indicted Defendant for one count of first-degree murder. On 23 March 2023, Defendant filed notice of his intent to argue self-defense at trial. Defendant's case went to trial on 17 April 2023 and the evidence tended to show the following.

Darrell Wayne Long lived in a camper on the property of Defendant's mother, Jayne McRee ("Jayne"). Long was a friend of Jayne's husband, Michael McIntyre, who passed away on 8 April 2017. On 23 June 2017, Jayne hosted a dinner at her home with Long and her neighbors, John and Jennifer Donnelly (respectively, "John" and "Jennifer"). While Jayne and Jennifer prepared dinner, Long became intoxicated. Thereafter, Jayne and Long began to argue about Long's alcohol abuse, bad hygiene, lack of contribution to "doing things around the house," and other similar topics.

During their argument, Jayne informed Long that he was no longer welcome to live on her property. Long became enraged, grabbed Jayne by the neck, and slammed her against the refrigerator. Long was six feet four inches tall and weighed

one hundred and sixty-six pounds. John intervened and "pr[ied] [Long] off of [Jayne] because he wasn't going to move on his own." Jayne and Long continued to argue and yell. John told Long to leave and escorted him to the door. When Long was outside Jayne's home, he yelled at Jayne and said he would return, to which Jayne responded that she had a shotgun. Long then returned to his camper for the night.

Later that night, at 10:22 p.m., Jayne texted Defendant that she "need[ed] back up" because Long "got his hands on [her] neck." Defendant replied "[a]ll I got is me and my gun" and said that he was on his way to Jayne's property. Defendant also said that he was twenty minutes away and Long was "dead." At the time, Defendant was thirty-three years old, six feet tall, and weighed approximately one hundred and ninety pounds.

According to Defendant, when he arrived at Jayne's house, she was sitting on the porch and appeared to be intoxicated. Defendant walked to the camper and found the door to be ajar. Defendant stood outside the camper and shouted to Long, who was inside, "did you choke my mom?" Defendant testified that Long "growl[ed] . . . like a lion" and "the "incredible hulk[,]" called Defendant a "punk," and charged at Defendant. Defendant testified that, out of fear for his life, he drew his gun and shot Long.

The State, on the other hand, offered testimony from medical examiners demonstrating that Defendant opened the door to the camper, drew his firearm, and from his position outside the camper shot Long as Long stood up inside the camper.

Long was shot once and the bullet entered the middle of his chest. Long did not have a weapon when he stood up.

Defendant did not contact law enforcement after shooting Long. Instead, Defendant shut the camper door and spent the evening with his girlfriend. Defendant texted Jayne the following morning of 24 June 2017 at 4:20 a.m. and asked her to call him when she woke up. Defendant also texted Jayne that they needed "to live in the fear of God from now on" and that he was going to "quit doing dope." When Jayne asked Defendant to come over that morning to assist in moving Long out, Defendant told her to "[l]ock the camper til I get there."

Instead of waiting on Defendant, Jayne knocked on the camper to "get [Long] out . . . ." When Long did not answer, Jayne entered the camper, discovered that Long had been shot, and called 9-1-1. Jayne informed law enforcement that she thought Defendant was responsible. That same day, officers initiated a traffic stop of Defendant and took him into custody. According to officers, when they questioned Defendant about Long, Defendant initially "acted like he didn't know" what happened to Long. But Defendant ultimately admitted to shooting Long.

At trial, the State moved to admit a video of Jayne's police interview from 29 June 2017. In the video, Jayne made a number of statements about Defendant. Defendant initially objected to all but the first ten minutes of the video, arguing that the remaining portion of the video was inadmissible. Defendant then identified and challenged specific statements by Jayne from the video. The trial court issued a

specific ruling for each challenged statement, finding some to be admissible and others inadmissible. The trial court ordered the State to redact the inadmissible statements from the video before presenting the video to the jury. Due to inadvertent technical difficulties, however, several of the inadmissible statements were played for the jury. Because defense counsel did not want to "call[] attention to things," defense counsel and the State agreed to cease showing the remaining portion of the video to the jury, not issue an instruction to the jury, and continue with the trial.

The jury found Defendant guilty as charged. The trial court sentenced Defendant to life in prison without the possibility of parole. Defendant entered oral notice of appeal in open court.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2023).

## III. Issues

The issues are whether: (1) the trial court erred by failing to rule on the admissibility of Jayne's police interview video after the first ten minutes of the video; (2) the trial court erred by overruling Defendant's objections to certain statements made by Jayne in the police interview video; (3) the trial court erred by failing to declare a mistrial *ex mero motu* after inadmissible statements made by Jayne in the police interview video were played to the jury; and (4) Defendant received IAC.

## IV. Analysis

## A. Jayne's Interview

First, Defendant contends the trial court erred by failing to rule on the admissibility of the entire police interview video after the first ten minutes. Specifically, Defendant argues the trial court should have viewed "the entire video for relevance and admissibility" rather than issue specific rulings on the admissibility of each challenged statement. We disagree.

Despite his initial objection to the entire video after the first ten minutes, defense counsel said he was "happy to give examples of the inappropriate, incompetent statements" made by Jayne in the video. After the trial court allowed defense counsel to list each statement, the trial court said, "[a]nd those are what you object to being played before the jury, what you've just recited?" Defense counsel replied: "Yes, yes, uh-huh." Then, the trial court asked defense counsel to repeat the challenged statements for the record before issuing individual rulings on each statement. After issuing each ruling, the trial court asked defense counsel, "All right. Anything further?" Defense counsel responded, "No, sir."

Even though defense counsel initially objected to all but the first ten minutes of the video, he clarified that the focus of his objection was specific statements made by Jayne in the video pertaining to Defendant's history and character. In discussion with the trial court, defense counsel continued to narrow his objection by identifying the specific statements from Jayne that he argued were inadmissible. After discussing each statement, the trial court asked defense counsel if those statements

are what he "object[s] to being played before the jury" and if there was "[a]nything further" that he wanted to discuss regarding his objection. Defense counsel understood the trial court's rulings and did not wish to be heard further. Because defense counsel narrowed his general objection to the video to specific statements made by Jayne in the video, and defense counsel had ample opportunity to restate or otherwise renew his general objection, the trial court did not err by only issuing rulings on the admissibility of each challenged statement.

Next, Defendant argues the trial court erred by overruling his objection to several statements made by Jayne in the interview video. In particular, Defendant contends the statements were irrelevant, improper character evidence, and improper opinion evidence. As a result, Defendant argues the error of allowing the statements was prejudicial. We disagree.

"This Court reviews a ruling on relevance de novo, but affords the trial court 'great deference' on appeal." *State v. Coleman*, 254 N.C. App. 497, 502, 803 S.E.2d 820, 824 (2017) (quoting *State v. Capers*, 208 N.C. App. 605, 615, 704 S.E.2d 39, 45 (2010)). Similarly, "whether Rule 404(b) evidence is properly admitted is a question of law and is reviewed de novo on appeal." *State v. Pickens*, 385 N.C. 351, 355, 893 S.E.2d 194, 198 (2023). "'Under a *de novo* review, [this Court] considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003). "In general,

we apply the abuse of discretion standard to reviews of the admissibility of lay opinion testimony." *State v. Collins*, 216 N.C. App. 249, 254, 716 S.E.2d 255, 259 (2011). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2023). Irrelevant evidence is inadmissible. N.C. Gen. Stat. § 8C-1, Rule 402. Rule 404(b) provides that evidence "of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b). "Although a lay witness may be allowed to testify as to his opinion of the emotions a person displayed on a given occasion, a lay witness may not give his opinion of another person's intention on a particular occasion." *State v. Hurst*, 127 N.C. App. 54, 63, 487 S.E.2d 846, 853 (1997); N.C. Gen. Stat. § 8C-1, Rule 701.

The trial court overruled Defendant's objection to the following statements made by Jayne: (1) "I don't think he's got much in his stable[;]" (2) "My son thinks I drink too much because he's a murderer . . . but he's a murderer[;]" (3) "[Defendant] is involved in illegal activity. Don't know him to carry a gun[;]" (4) "This boy has a history of criminal activity. He is a bad egg[;]" and (5) "He did not talk to me. I think

the boy needs to be completely off the streets. Is this a death penalty case?" Even assuming all but the first ten minutes of the video should have been excluded, any such error does not amount to prejudicial error. Given the overwhelming evidence of Defendant's guilt, including but not limited to Defendant's incriminating text messages, his failure to call police after shooting Long, and the medical examiners' testimony, there is no "reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial . . . ." *See* N.C. Gen. Stat. § 15A-1443(a) (2023).

In his last argument concerning Jayne's police interview, Defendant argues the trial court erred by failing to declare a mistrial *ex mero motu* after the State played for the jury statements made by Jayne in the video that the trial court ruled were inadmissible. We disagree.

A trial court's failure to intervene and declare a mistrial *ex mero motu* is reviewed for abuse of discretion. *See State v. Jaynes*, 342 N.C. 249, 280, 464 S.E.2d 448, 467 (1995). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." *White*, 312 N.C. at 777, 324 S.E.2d at 833.

The trial court sustained Defendant's objection to the following statements made by Jayne in the police interview video: (1) "[Defendant] was at a church conference all day Friday. That makes me wonder about his stability. How do you go to church all day and end up a murderer? Is there some way he can say he's crazy

because withdraw from methadone[;]" (2) "[Defendant] threatened to kill before[;]" (3) "Everyone in our family knows [Defendant is] a rotten egg. This isn't the first experience with violence. Crowbar incident, blades, knives taken from my house[;]" (4) "I'm wondering how [Defendant] could walk up to that camper and shoot and then smile in his mug shot. I'm not ashamed to tell everything I know about him. He needs to be behind bars[;]" and (5) "[Defendant] was killing kittens when he was six years old with a hammer. We tried to get him help but nothing worked."

The trial court ruled that the State must redact the statements from the police interview video before presenting the video to the jury. Despite the State's efforts to redact the statements, several of the challenged statements excluded by the trial court were presented to the jury. Defense counsel did not ask the trial court to declare a mistrial or request a jury instruction, but instead agreed with the State to end the video at that point and continue the trial—in order to avoid bringing the jury's "attention" to the statements. *See State v. Prevatte*, 356 N.C. 178, 236, 570 S.E.2d 440, 472 (2002) ("[M]atters of trial strategy . . . are not generally second-guessed by this Court."). Given the trial court's reasoned discussion with the State and defense counsel on how to proceed after Jayne's inadmissible statements were played to the jury, the trial court's failure to declare a mistrial *ex mero motu* was not arbitrary or "manifestly unsupported by reason." *See White*, 312 N.C. at 777, 324 S.E.2d at 833.

**B. IAC**

Finally, Defendant argues that he received IAC. In particular, Defendant contends that his defense counsel's failure to: (1) file a pre-trial motion to suppress; (2) renew his objection to all but the first ten minutes of the video of Jayne's police interview; and (3) move for a mistrial when the State played for the jury several of Jayne's statements which the trial court determined were inadmissible. Because Defendant concedes that he is unable to develop his IAC claim on direct appeal, he requests that we dismiss his IAC claim without prejudice to a subsequent MAR. We agree.

Generally, "[t]he accepted practice is to raise claims of ineffective assistance of counsel in post-conviction proceedings, rather than direct appeal." *State v. Dockery*, 78 N.C. App. 190, 192, 336 S.E.2d 719, 721 (1985). Regarding IAC claims, a MAR is preferable to a direct appeal on the cold record because to

> defend against ineffective assistance of counsel allegations, the State must rely on information provided by defendant to trial counsel, as well as [the] defendant's thoughts, concerns, and demeanor. Only when all aspects of the relationship are explored can it be determined whether counsel was reasonably likely to render effective assistance. Thus, superior courts should assess the allegations in light of all the circumstances known to counsel at the time of representation.

*State v. Buckner*, 351 N.C. 401, 412, 527 S.E.2d 307, 314 (2000) (cleaned up).

IAC "claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of

investigators or an evidentiary hearing." *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001) (citations omitted). Nonetheless, "should the reviewing court determine that IAC claims have been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant's right to assert them during a subsequent MAR proceeding." *Id.* at 167, 557 S.E.2d at 525 (citation omitted).

In order to prevail on an IAC claim, a defendant "must show that counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064, 2068, 80 L. Ed. 2d 674, 693, 698 (1984); *see also State v. Braswell*, 312 N.C. 553, 562–63, 324 S.E.2d 241, 248 (1985).

Here, as Defendant concedes, the cold record is insufficient to assess Defendant's IAC claim. Therefore, "further development of the facts" is required. *See State v. George*, 289 N.C. App. 660, 665–66, 891 S.E.2d 324, 328 (2023). As such, we dismiss Defendant's IAC claim without prejudice to Defendant's right to file a MAR below. *See id.* at 665–66, 891 S.E.2d at 328.

## V. Conclusion

The trial court did not prejudicially err by issuing individual rulings on each statement made by Jayne in the police interview video, overruling Defendant's objection to certain statements made by Jayne in the video, or failing to declare a mistrial *ex mero motu* after Jayne's inadmissible statements were played to the

jury. *See State v. King*, 386 N.C. 601, 608, 906 S.E.2d 808, 814 (2024) (reiterating the principle that defendants "not entitled to receive 'perfect' trials; instead, they are entitled to receive 'a fair trial, free of prejudicial error'") (quoting *State v. Malachi*, 371 N.C. 719, 733, 821 S.E.2d 407 (2018)). Because further factual development is required, we dismiss Defendant's IAC claim without prejudice to Defendant's right to file a MAR below.

NO PREJUDICIAL ERROR IN PART, DISMISSED IN PART.

Judges ZACHARY and WOOD concur.

Report per Rule 30(e).