STATE OF NORTH CAROLINA v. MAURICE ILVENTO PARKER, Defendant

No. COA99-759

(Filed 3 October 2000)

**1. Homicide— first-degree murder—short-form indictment**

The short-form indictment for first-degree murder is constitutional.

**2. Evidence— other acts of misconduct—admissible**

Admission of other acts of misconduct was not erroneous in a first-degree murder prosecution where the evidence was relevant to the circumstances of the crime, formed a natural part of the State's account of the motive, completed the story of the crime, and the probative value was not outweighed by the danger of unfair prejudice. N.C.G.S. § 8C-1, Rule 404(b).

**3. Discovery— criminal—other act of misconduct**

The denial of pretrial disclosure of N.C.G.S. § 8C-1, Rule 404(b) evidence did not deprive a first-degree murder defendant of a fair trial. Under N.C.G.S. § 15A-903(f)(1), no statement made by a State's witness or prospective witness is required to be disclosed until after that witness has testified on direct examination.

**4. Discovery— criminal—open files**

There was no abuse of discretion in a first-degree murder prosecution where an assistant district attorney stated that everything had been turned over to defendant; the State disclosed its investigative file pursuant to an open file policy; the investigative file included officers' interview notes but not interviews conducted by counsel in preparation for trial; and the court allowed the specific testimony at issue, but ordered a recess before cross-examination.

**5. Evidence— hearsay—victim's conversation with defendant—deceased witness's statement**

The trial court did not err in a first-degree murder prosecution (and any error was harmless) in the admission of an officer's testimony relating the statement of an unavailable witness concerning a conversation between the victim and defendant before the murder. The victim's initial statement was admissible under N.C.G.S. § 8C-1, Rule 803(3) as showing the victim's state of mind

STATE v. PARKER

[140 N.C. App. 169 (2000)]

and the statement to the officer was admissible under N.C.G.S. § 8C-1, Rule 804(b)(5), the residual exception, because the witness was dead and the trial court properly considered each of the trustworthiness elements. There was no prejudice even if the witness's statement was inadmissible because it was nearly identical to prior testimony.

**6. Appeal and Error— general objection—appellate review waived**

Defendant waived appellate review of the overruling of his objections to testimony by two witnesses in a first-degree murder prosecution by making only a general objection.

**7. Witnesses— cross-examination—discretion of trial judge**

The trial court did not abuse its discretion in a first-degree murder prosecution by limiting the cross-examination of two witnesses.

Appeal by defendant from judgment entered 13 October 1998 by Judge D. Jack Hooks, Jr. in Cumberland County Superior Court. Heard in the Court of Appeals 10 May 2000.

*Michael F. Easley, Attorney General, by H. Alan Pell, Special Deputy Attorney General, for the State.*

*Paul M. Green for defendant-appellant.*

SMITH, Judge.

Defendant appeals a judgment imposing a life sentence following conviction by a jury of first-degree murder. We find no prejudicial error.

On 21 January 1993, shortly before 1:00 a.m., the Cumberland County Sheriff's department dispatched Deputy Regina Robinson-Hart (Deputy Robinson-Hart) to Hall Motor Company (HMC) in response to a reported shooting. HMC consisted of a car sales business and junkyard. Deputy Robinson-Hart found Vonnie Hall (victim), owner of HMC, dead in the driver's seat of his vehicle. Mike Hall (Hall), HMC sales manager, was seated in a company wrecker with his wife when the deputy arrived. A pathologist later determined victim died as a result of three gunshot wounds to the head.

Defendant, a trooper with the North Carolina Highway Patrol, met victim in 1992, made frequent visits to HMC, and had numerous

encounters with victim, Hall, and other HMC employees. When a break-in occurred at HMC on 10 January 1993, defendant joined victim, police investigators, and others at the scene. Police and HMC employees discovered that sales contracts, a receipt book, around 150 motor vehicle titles, and a shotgun had been taken from the building. Without the stolen contracts, receipt book, and titles, victim could not determine whether vehicles were missing from the premises.

After a three-year homicide investigation, defendant was indicted for first-degree murder on 25 March 1996 and tried during the 29 September 1998 Criminal Session of Cumberland County Superior Court. The State's evidence indicated that defendant killed victim after victim threatened to alert authorities that defendant used forged signatures, false identities, and improperly notarized documents to sell cars defendant did not legally possess or own. Witnesses also related that defendant sold cars without a dealer's license and violated highway patrol policy prohibiting secondary employment.

Following a verdict of guilty on the charge of first-degree murder, the trial court imposed a sentence of life imprisonment. Defendant appeals.

[1] Defendant first contends the short-form indictment used in this case and authorized by N.C. Gen. Stat. § 15-144 (1983) is unconstitutional in light of *Jones v. United States*, 526 U.S. 227, 143 L. Ed. 2d 311 (1999), because it failed to allege all essential elements of first-degree murder. We disagree.

In *Jones*, the United States Supreme Court was interpreting the federal carjacking statute, 18 U.S.C. § 2119 (1993), which provides for three levels of punishment depending on whether the victim was uninjured or slightly injured, seriously injured, or killed during the carjacking. According to the majority, this statute could be interpreted as one offense with three possible penalties or three separate offenses. The Court held: "[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 243 n.6, 143 L. Ed. 2d at 326. To prevent trial courts from imposing a greater punishment without charging all of the essential elements in the indictment, the Court held the statute created three

separate offenses that must be charged from the outset. *Id.* at 252, 143 L. Ed. 2d at 331.

In the instant case, the indictment provided:

THE JURORS FOR THE STATE UPON THEIR OATH PRE-SENT that on or about the 21st day of January, 1993, in the County named above the defendant named above unlawfully, willfully and feloniously did of malice aforethought kill and murder Vonnie Lee Hall. This act was in violation of North Carolina General Statutes Section 14-17.

Defendant argues this indictment failed to allege either the essential elements of first-degree murder or the facts relied upon to increase the permissible range of punishment. In *State v. Wallace*, 351 N.C. 481, 528 S.E.2d 326 (2000), the North Carolina Supreme Court reviewed an indictment containing nearly identical language to that of the indictment *sub judice*, and the Court, considering the United States Supreme Court's ruling in *Jones*, held the indictment was sufficient to charge first-degree murder. The *Wallace* Court noted it had "consistently held indictments based on [G.S. § 15-144 to be] in compliance with both the North Carolina and United States Constitutions." *Id.* at 504-05, 528 S.E.2d at 341 (citations omitted). "In light of our overwhelming case law approving the use of short-form indictments and the lack of a federal mandate to change that determination, we decline to do so." *Id.* at 508, 528 S.E.2d at 343; *see, e.g., State v. Kilpatrick*, 343 N.C. 466, 472, 471 S.E.2d 624, 628 (1996) (holding a short-form indictment authorized by N.C. Gen. Stat. § 15-144 sufficient to charge first-degree murder on the basis of premeditation and deliberation). Because "it is not [the Court of Appeals'] prerogative to overrule or ignore . . . written decisions of our Supreme Court," *Kinlaw v. Long Mfg.*, 40 N.C. App. 641, 643, 253 S.E.2d 629, 630, *rev'd on other grounds*, 298 N.C. 494, 259 S.E.2d 552 (1979), we are bound to follow the Supreme Court's decision in *Wallace*. This assignment of error is overruled.

[2] Defendant next contends evidence of defendant's alleged crimes, wrongs, and acts was admitted in violation of the Rules of Evidence and defendant's due process rights. Under Rule 404(b) of the North Carolina Rules of Evidence,

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other

purposes, such as proof of motive, opportunity, intent, prepara-tion, plan, knowledge, identity, or absence of mistake, entrap-ment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (1999). "[E]vidence of other offenses is *admissible* so long as it is *relevant to any fact or issue other than* the character of the accused." *State v. Weaver*, 318 N.C. 400, 403, 348 S.E.2d 791, 793 (1986) (citation omitted) (emphasis added). Relevant evidence is "evidence having any tendency to make the existence of *any fact* that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (1999) (emphasis added). Thus, Rule 404(b) is "a clear general rule of *inclusion* of rel-evant evidence of other crimes, wrongs or acts by a defendant, sub-ject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990).

Defendant contends the State failed to show that defendant's alleged wrongful conduct demonstrated and was logically connected to his motive for murder or was otherwise admissible pursuant to Rule 404(b). Quoting *State v. Jones*, 322 N.C. 585, 588, 369 S.E.2d 822, 824 (1988), defendant correctly argues " 'the admissibility of evi-dence of a prior crime must be closely scrutinized since this type of evidence may put before the jury crimes or bad acts allegedly com-mitted by the defendant for which he has neither been indicted nor convicted.' " While "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice," N.C. Gen. Stat. § 8C-1, Rule 403 (1999), we note exclusion of "evi-dence under Rule 403 is a matter left to the sound discretion of the trial court. . . . Evidence which is probative of the State's case neces-sarily will have a prejudicial effect upon the defendant; the question is one of degree," *Coffey*, 326 N.C. at 281, 389 S.E.2d at 56 (citations omitted).

We do not believe the probative value of the evidence of miscon-duct in the case at bar is outweighed by the danger of unfair preju-dice. Here, defendant's alleged wrongful acts were part of the chain of events explaining the motive, preparation, planning, and commis-sion of the crime. *See State v. Agee*, 326 N.C. 542, 548, 391 S.E.2d 171, 174 (1990) (holding evidence of marijuana possession established the chain of circumstances leading up to defendant's arrest for LSD pos-

session, thus Rule 404(b) did not require its exclusion as evidence probative only of defendant's propensity to possess illegal drugs). Evidence describing the chain of events is " 'properly admitted if linked in time and circumstances with the charged crime, or [if it] forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.' " *Id.* (alteration in original) (citation omitted).

In the instant case, defendant contends, in part, that the trial court erroneously admitted evidence of defendant's misconduct or violations of law through the testimony of David Martin (Martin), Joey Gardner (Gardner), Douglas Furmage (Furmage), Charles Maynor (Maynor), Lloyd Goodson (Goodson), William Mitrisin (Mitrisin), and other witnesses. We disagree.

Martin's testimony concerning defendant's activities at the time of victim's murder was admitted to describe the chain of events surrounding the crime. Martin testified that, on the night of the murder, defendant came unexpectedly to Martin's home, told him he (defendant) had something he needed Martin to do, and asked him to ride in the floor of defendant's patrol car so that he would not be seen. Defendant drove to Hope Mills and told Martin to "Get out, sneak through this yard here and go back up to the convenience store and I'll pick you up." After exiting the vehicle, Martin saw defendant's patrol car park next to another vehicle at HMC, heard gunshots from that area, looked again in that direction, and observed defendant's car still parked at HMC. Defendant picked Martin up at a nearby convenience store, suggested Martin's family would be harmed if Martin told others what had happened, and sped away from the scene. This description of defendant's behavior on the night of victim's death was relevant as evidence of the circumstances of the crime.

Likewise, there was no error when the trial court allowed the State's witnesses to testify about defendant's car sales, because such evidence was a vital and natural part of the State's chronicle of the murder. Gardner, a Division of Motor Vehicles (DMV) inspector, described proper title transfer procedures. Furmage, who frequently notarized titles for defendant, testified that he and defendant had violated or circumvented a number of these policies or laws. Maynor provided further evidence of this scheme when he testified that he sold a car to HMC without signing the title, his purported signature actually was signed by someone else, and he had never met defendant or the person (Furmage) who notarized the signature on defendant's behalf. As evidence of defendant's alleged scheme to violate motor

vehicle registration laws and to avoid discovery thereof, such testimony formed an integral and natural part of the State's account of and motive for the murder. Therefore, this evidence was properly admitted.

Finally, the trial court admitted additional evidence of misconduct for the purpose of completing the story of the crime. This evidence included the testimony of Goodson, a State Highway Patrol lieutenant, who testified he had conducted a search of defendant's patrol car and found licenses and registrations that should have been turned over to a magistrate under highway patrol policy. Mitrisin, a Fayetteville Police Department investigator, described his discovery that some information from these documents also appeared in car title transactions involving defendant. Each of these witnesses provided further evidence that defendant was involved in activities that were either illegal or prohibited by the State Highway Patrol, allowing the jury to infer that the possibility of victim informing authorities gave defendant a motive for the murder. Evidence of these details thus provides jurors with a complete understanding of the reason for the murder.

In addition to those witnesses mentioned above, defendant contends eighteen other witnesses were allowed to testify about unrelated misconduct in violation of Rule 404(b). We have reviewed the testimony of each witness, and in each instance, we conclude their statements were properly admitted under Rule 404(b) for purposes other than showing defendant's character and propensity to commit murder. *See State v. Stager*, 329 N.C. 278, 302-03, 406 S.E.2d 876, 890-91 (1991) (holding evidence concerning the death of defendant's first husband is admissible as long as it is also relevant for a purpose other than showing defendant's propensity to commit the offense charged). In fact, most of the witnesses testified to acts of misconduct similar to or duplicative of those already discussed.

[3] Defendant also contends evidence of misconduct the State intended to use at trial should have been disclosed prior to trial, because the lack of pre-trial notice "deprived [defendant] of the right to be informed of the accusation, to the effective assistance of counsel, and to due process of law including a fair opportunity to prepare and present his defense" in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article I, Sections Nineteen and Twenty-three, of the North Carolina Constitution. We disagree.

The extent to which a criminal defendant is entitled to pre-trial disclosure by the United States Constitution is well settled:

> With the exception of evidence falling within the realm of the *Brady* rule, there is no general right to discovery in criminal cases under the United States Constitution, thus a state does not violate the Due Process Clause of the Federal Constitution when it fails to grant pretrial disclosure of material relevant to defense preparation but not exculpatory.

*State v. Cunningham*, 108 N.C. App. 185, 195, 423 S.E.2d 802, 808 (1992) (citations omitted); *see, e.g., Weatherford v. Bursey*, 429 U.S. 545, 549, 51 L. Ed. 2d 30, 42 (1977) (holding "[t]here is no general constitutional right to discovery in a criminal case" and " 'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded' "); *U.S. v. LaRouche*, 896 F.2d 815, 826 (4th Cir. 1990) (holding criminal defendants have no general constitutional right to discovery). Further,

> nothing in our statutory discovery provisions would require *the State to compel* its witnesses to submit to any form of interview or questioning by the defense prior to trial; in fact, the State does not [] have to afford the defense pre-trial access to a list of its potential witnesses or copies of any statements they may have made.

*State v. Pinch*, 306 N.C. 1, 12, 292 S.E.2d 203, 214 (1982) (citations omitted), *overruled on other grounds by State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988).

The North Carolina Supreme Court has held that Rule 404(b) " 'is not a discovery statute which requires the State to disclose such evidence as [the State] might introduce [under the rule].' " *State v. Ocasio*, 344 N.C. 568, 576, 476 S.E.2d 281, 285 (1996) (quoting *State v. Payne*, 337 N.C. 505, 516, 448 S.E.2d 93, 99 (1994)). Instead, North Carolina law provides that "no statement . . . made by a State witness or prospective State witness . . . shall be the subject of subpoena, discovery, or inspection until that witness has testified on direct examination in the trial of the case." N.C. Gen. Stat. § 15A-903(f)(1) (1999).

There is no support for defendant's contention that further disclosure of Rule 404(b) evidence was required under North Carolina law. Thus, we hold that denial of pre-trial disclosure of Rule 404(b) evidence did not deprive defendant of a fair trial; this assignment of error is overruled.

**[4]** Defendant also asserts the trial court should have excluded the testimony of HMC service manager Jerry Bell (Bell), because, according to defendant, the State deliberately misrepresented its intent to make its files available to defendant. We disagree.

Under North Carolina law governing sanctions for failure to disclose evidence, the trial court may

(1) Order the party to permit the discovery or inspection, or

(2) Grant a continuance or recess, or

(3) Prohibit the party from introducing evidence not disclosed, or

(3a) Declare a mistrial, or

(3b) Dismiss the charge, with or without prejudice, or

(4) Enter other appropriate orders.

N.C. Gen. Stat. § 15A-910 (1999). We note "the sanctions it authorizes are not mandatory, but permissive, optional and subject to the sound discretion of the judge." *State v. Hall*, 93 N.C. App. 236, 237, 377 S.E.2d 280, 281 (1989) (citation omitted).

During the 2 September 1998 motions hearing, an assistant district attorney declared, "We've turned over everything that we have to [defendant's attorney]. . . . We have given him everything we have. . . . I don't have any problem representing to the court that we have turned over everything that we do have, whether we are required to or not." Apparently, in this judicial district, pursuant to an open-file policy, the State disclosed its investigative file, which included officers' interview notes but not interviews conducted by counsel in preparation for trial. Thus, Bell's statement to police was disclosed to defendant, while an assistant district attorney's notes concerning Bell's account of an angry victim threatening to turn defendant over to superiors was not submitted for discovery. When the State sought to introduce this evidence at trial, defense counsel objected, protesting that defendant should have been given notice of Bell's expected testimony under the State's open-file policy. The State argued the evidence was work product, garnered in preparation for trial, and was not subject to disclosure under its policy. After considering the parties' assertions regarding their differing interpretations of the State's offer to disclose "everything" it had, the trial court allowed Bell's testimony but ordered a recess

before cross-examination to allow defendant to prepare to question the witness.

As sanctions for discovery are permissive and within the discretion of the trial judge, we must find abuse of discretion in order to reach a different result. *See, e.g., State v. Bearthes*, 329 N.C. 149, 405 S.E.2d 170 (1991) (holding trial court's failure to impose permissive sanctions allowed by section 15A-910 was not abuse of discretion and did not prejudice defendant). Under *Bearthes*, *Hall*, and section 15A-910, the trial court's order was appropriate and did not constitute abuse of discretion. This assignment of error is overruled.

[5] Defendant next argues the trial court should not have admitted the testimony of Mitrisin, a police investigator, relating a statement taken from HMC customer William Hammel (Hammel) before Hammel's death. We disagree.

Before the State called Mitrisin as a witness, Bell described the conversation he overheard at HMC one to two days before the murder. Bell testified he "heard [victim] tell [defendant] that he wanted his titles to his cars or [victim was] going to [defendant's] superior or higher." On 23 July 1993, Hammel gave a similar statement to Mitrisin. Hammel's statement indicated that one or two days before the murder, he heard victim tell a trooper "You better get your act together or I'm going to go to your supervisor." The State sought to introduce Hammel's statement through Mitrisin, because Hammel was unavailable to testify.

Defendant does not contest the trial court's ruling that Bell's testimony was admissible under Rule 803(3) as a statement of the victim's existing state of mind, intent, plan, motive, and design, and we agree that this evidence was properly admitted. Rather, defendant contends that, unlike Bell's testimony, Hammel's statement was impermissible hearsay and should not have been admitted through Mitrisin.

After a lengthy *voir dire*, the trial court held that Hammel's statement was:

> *indicative of the state of mind of the deceased*, Vonnie Hall, and would indicate Vonnie Hall's expression of his intention, plan, etc., to contact the defendant's superiors. It is material and relevant. The Court finds that it is more probative on this issue than other evidence which the proponent has or could procure through reasonable efforts . . . .

STATE v. PARKER

[140 N.C. App. 169 (2000)]

Further, it is more probative in that there was not the long-standing relationship between the witness or the deceased Mr. [Hammel] and the witness Jerry Bell . . . . The Court further concludes that the best interest of justice will be served by the admission, that the probative value exceeds any prejudicial effect and concludes further that the statement should be admitted under [N.C. Gen. Stat. § 8C-1, Rule 804(b)(5) (1999) (residual hearsay exception)].

(Emphasis added.)

If we assume *arguendo* that Mitrisin's testimony was offered for the truth of the matter asserted,[1] the trial court was presented with a classic case of "double hearsay." Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" and is inadmissible unless it is subject to a recognized exception. N.C. Gen. Stat. § 8C-1, Rule 801 (1999). The first declarant was victim, who said "You better get your act together or I'm going to go to your supervisor." The second declarant was Hammel, who overheard victim's comment and relayed victim's words in a statement to police officer Mitrisin. For Mitrisin's testimony of Hammel's statement to be admissible in evidence, both victim's and Hammel's statements must fall within an exception to the rule prohibiting hearsay. As to victim's initial statement, the trial court found, and defendant does not challenge, that it would be admissible under N.C. Gen. Stat. § 8C-1, Rule 803(3) (1999) (victim's state of mind). It is Hammel's statement to Mitrisin that defendant contends was inadmissible hearsay.

The State contends the trial court did not err because it "ruled that the statement was admissible pursuant to Rule 803(3), a ruling upon which the appellant has waived appellate review." While the initial statement by the trial court, *i.e.*, "Mr. [Hammel]'s statement would be indicative of the state of mind of the deceased, Vonnie Hall, and would indicate [victim]'s expression of his intention, plan, etc., to

---

1. Although the trial court's language to the parties indicated its intent to admit the evidence as an exception to the rule prohibiting hearsay, prior to Mitrisin taking the stand, the trial court instructed the jury:

Ladies and gentlemen, this evidence again is being offered and received *solely for the purpose of showing that the defendant had a motive* for the commission of the offense charged in this case. If you believe the evidence, again you may consider it but only for that limited purpose for which it is offered.

(Emphasis added.) Accordingly, it appears from this limiting instruction that the trial court did not intend for the evidence to be admitted for its truth.

contact the defendant's superiors," is susceptible to such an interpretation, a close look at the scenario facing the trial court reveals the court's intent to admit *Hammel's* statement under Rule 804(b)(5) and *victim's* statement under Rule 803(3). The statement introduced related directly to victim's state of mind, but not to Hammel's state of mind. Accordingly, the State's argument must fail.Rule 804 provides in pertinent part:

> (b) *Hearsay Exceptions.*—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> . . . .
>
>> (5) Other Exceptions.—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it gives written notice stating his intention to offer the statement and the particulars of it, including the name and address of the declarant, to the adverse party sufficiently in advance of offering the statement to provide the adverse party with a fair opportunity to prepare to meet the statement.

N.C. Gen. Stat. § 8C-1, Rule 804(b)(5).

Defendant contends (1) the statement was immaterial "because Hammel never identified the person to whom [victim] was speaking as defendant," (2) Mitrisin's testimony of Hammel's statement was "not more probative than other evidence . . . because Jerry Bell gave' similar testimony," and (3) there were insufficient "circumstantial guarantees of trustworthiness." After reviewing the record on appeal, we find evidence to support the trial court's assessment as to each of these particular findings, which in turn support the trial court's decision to allow the hearsay statements under the Rule 804(b)(5) catch-

all exception. *See State v. Pretty*, 134 N.C. App. 379, 385, 517 S.E.2d 677, 682, *disc. review denied*, 351 N.C. 117, S.E.2d (1999).

Nonetheless, we further address the issue of whether the admission of Mitrisin's testimony violated defendant's constitutional right of confrontation. The residual or "catch-all" hearsay exception of Rule 804(b)(5) is not a "firmly-rooted" exception. *See Idaho v. Wright*, 497 U.S. 805, 817, 111 L. Ed. 2d 638, 653 (1990); *State v. Jackson*, 348 N.C. 644, 653, 503 S.E.2d 101, 106 (1998). Accordingly, "[t]he Confrontation Clauses in the Sixth Amendment to the United States Constitution and Article I Section 23 of the North Carolina Constitution prohibit the State from introducing hearsay evidence in a criminal trial unless the State: 1) demonstrates the necessity for using such testimony, and 2) establishes 'the inherent trustworthiness of the original declaration.' " *State v. Waddell*, 130 N.C. App. 488, 494, 504 S.E.2d 84, 88 (1998) (citation omitted), *modified on other grounds and aff'd*, 351 N.C. 413, 527 S.E.2d 644 (2000). The trial court's ruling in this regard will not be disturbed on appeal unless the findings of fact are not supported by competent evidence or the law is applied erroneously. *See State v. Hurst*, 127 N.C. App. 54, 59, 487 S.E.2d 846, 851 (1997).

" 'Necessity' in this context is not limited to a showing of unavailability, such as when the declarant is dead, out of the jurisdiction, or insane. It also includes situations in which the court 'cannot expect, again, or at this time, to get *evidence of the same value* from the same or other sources.' " *Jackson*, 348 N.C. at 652-53, 503 S.E.2d at 106 (citations omitted). In the case at bar, not only was Hammel dead, the trial court specifically held that his statement was more trustworthy than Bell's statement (which was practically identical) because of Bell's close relationship with victim. Accordingly, the "necessity" element was met.

As to the trustworthiness element:

In evaluating whether the hearsay testimony meets the circumstantial guarantees of trustworthiness, the trial court should consider the following factors:

(1) assurances of the declarant's personal knowledge of the underlying event, (2) the declarant's motivation to speak the truth or otherwise, (3) whether the declarant has ever recanted the statement, and (4) the practical availability of the declarant at trial for meaning of cross examination.

*Pretty*, 134 N.C. App. at 386, 517 S.E.2d at 683 (quoting *State v. Triplett*, 316 N.C. 1, 10-11, 340 S.E.2d 736, 742 (1986) (citation omitted)). In this case, the trial court held:

> [T]here is no evidence that this individual has ever recanted the statement. He has been interviewed one time. That the individual did not seek out Mr. Mitrisin, although he was apparently willing to speak to Mr. Mitrisin when he was contacted.
>
> Further note in finding substantial guarantees of trustworthiness that he made it to Mr. Mitrisin apparently . . . knowing that Mr. Mitrisin was an investigator for the law enforcement agency investigating the death of Vonnie Hall. He has never recanted it. The Court would find that he appeared to be motivated to speak the truth.

The trial court properly considered each of the trustworthiness elements, and the record supports the trial court's findings. Defendant's confrontation rights were not violated.

Furthermore, assuming *arguendo* that Mitrisin's testimony concerning Hammel's statement was inadmissible, we discern no prejudice to defendant. When one witness's testimony is properly admitted, erroneous admission of repetitive or cumulative subsequent testimony is not necessarily prejudicial. In *State v. Washington*, this Court found admission of testimony under the residual hearsay exception violated defendant's Sixth Amendment right of confrontation, because the trial court failed to make particularized findings that the statements possessed circumstantial guarantees of trustworthiness. 131 N.C. App. 156, 164, 506 S.E.2d 283, 288 (1998), *disc. review denied*, 350 N.C. 105, 533 S.E.2d 477 (1999). Nevertheless, we held "the trial court's error could not have prejudiced defendant," because this testimony was "almost entirely repetitive of the testimony of [other witnesses], all of which was properly admitted. For this reason, the admission of the testimony . . . , though error, was harmless beyond a reasonable doubt." *Id.*; *see* N.C. Gen. Stat. § 15A-1443(b) (1999).

In the instant case, Hammel's statement regarding the circumstances and content of Hall's conversation with defendant was nearly identical to Bell's prior testimony. Therefore, we conclude that admission of Hammel's statement, even if error (and we do not believe it was), was harmless beyond a reasonable doubt.

MEADOWS v. N.C. DEP'T OF TRANSP.

[140 N.C. App. 183 (2000)]

**[6]** Defendant next contends the trial court erroneously overruled his objections to testimony by Martin and Furmage; however, defendant has waived appellate review with respect to these arguments. Under N.C. R. App. P. 10(b)(1), the party seeking review must have made "a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." Defendant made only general objections to the witnesses' testimony, and this Court has held "a general objection, if overruled, is ordinarily not effective on appeal." *State v. Hamilton*, 77 N.C. App. 506, 509, 335 S.E.2d 506, 508 (1985) (citations omitted).

**[7]** Defendant's contention that the trial court erred by limiting the cross-examination of two witnesses is without merit. "[T]he scope of cross-examination rests largely within the trial court's discretion and is not ground for reversal unless the cross-examination is shown to have improperly influenced the verdict." *State v. Woods*, 345 N.C. 294, 307, 480 S.E.2d 647, 653 (1997). In light of the evidence presented at trial, defendant has failed to demonstrate the trial court erred. This assignment of error is overruled.

In addition to those assignments of error discussed herein, we have reviewed the remaining assignments of error that were properly assigned as error and preserved in defendant's brief and find them to be without merit.

No prejudicial error.

Judges WYNN and MARTIN concur.