STATE OF NORTH CAROLINA v. JEFFREY B. FRIERSON

No. COA01-1250

(Filed 1 October 2002)

**Evidence— hearsay—business records exception—company deposit slips—validation reports—bank account statements**

The trial court did not err in an embezzlement case by admitting certain records into evidence including company deposit slips, validation reports, and bank account statements under the N.C.G.S. § 8C-1, Rule 803(6) business records exception to the hearsay rule even though defendant contends the State failed to lay a proper foundation, because: (1) the alleged counterfeit deposit slips were offered for the non-hearsay purpose of showing that they existed so that the jury could consider them as circumstantial evidence in determining whether defendant embezzled from his employer and concealed it by falsifying deposit records; (2) in regard to the valid deposit slips, evidence was presented that the slips were filled out at the end of each work shift, the slips were kept in the ordinary course of business, and the records were dated so that it was unnecessary for a witness to testify from personal knowledge that they were made at or near the time of the transaction in question; (3) in regard to the validation reports, evidence was presented that the reports were made and kept in the ordinary course of business, were authenti-

cated by a witness who was familiar with them and the system in which they were made, and the records were created at or near the time of the transactions involved; and (4) in regard to the bank account statements, evidence was presented by a witness familiar with the record keeping system at the bank that the statements were kept in the ordinary course of business and that the statements being offered into evidence were made on the pertinent dates.

Appeal by defendant from judgment entered 28 March 2001 by Judge L. Todd Burke in Guilford County Superior Court. Heard in the Court of Appeals 13 August 2002.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Daniel S. Johnson, for the State.*

*Causey Law Offices, by Ames C. Chamberlin for defendant-appellant.*

HUNTER, Judge.

Jeffrey B. Frierson ("defendant") appeals from a judgment sentencing him to a suspended term of five to six months in prison upon his conviction of embezzlement. Defendant claims the trial court erred in admitting certain records into evidence under the business records exception to the hearsay rule because the State failed to lay a proper foundation. For reasons stated herein, we find no error.

Defendant was charged with embezzling money belonging to J.T. Enterprises, Inc., a management company that runs several McDonald's restaurants, including the one at issue in this case located at the intersection of South Elm-Eugene Street and Lee Street in Greensboro, North Carolina. Evidence at trial tended to show that defendant was promoted to manager of this McDonald's in January 1999. As manager, defendant's responsibilities included overseeing the day-to-day operations of the restaurant. Johnny Tart ("Mr. Tart") is the owner of this McDonald's and President of J.T. Enterprises, Inc.

At trial, Mr. Tart explained the procedure for handling and depositing cash receipts for the restaurant where defendant was employed. According to Mr. Tart, each shift manager takes the cash receipts from the registers for that shift's sales, counts the money and fills out a deposit slip for the checking account. The deposit slip and

STATE v. FRIERSON

[153 N.C. App. 242 (2002)]

the money are then put into a bag, sealed, placed in a safe and locked up. After placing the money and deposit slip in the safe, the shift manager logs into the restaurant's computer system using an identifying code and enters the deposit amount. Thereafter, the money and deposit slips are taken from the safe to the bank for deposit. According to Mr. Tart, at the particular McDonald's where defendant was employed, defendant was the only manager who had a car to drive to the bank, so he was given permission to take all of the deposits from the safe to the bank. Mr. Tart further testified that the only other person who could have taken deposits to the bank from that McDonald's was Mike Teeple, an operations manager in charge of four McDonald's restaurants and employed by J.T. Enterprises, Inc.

Once the bank deposit is made and a receipt of the deposit from the bank is received, the deposit is "validated" in the restaurant's computer. According to Mr. Tart, defendant was the only manager at the McDonald's restaurant where he was employed who was able to validate deposits. This validating procedure is merely a way of confirming that the cash has gone from the safe to the bank and that the total amount on the deposit slip from the bank matches the amount that was supposed to have been deposited.

After a deposit slip is validated, a cash sheet for that day is printed showing the amount of total sales, receipts and deposits. The deposit slips are then stapled to the cash sheet and validation sheet. The cash sheet, validation sheet, and deposit slips are then sent to the J.T. Enterprises, Inc. office where the deposits are entered into the checkbook so that a running balance can be kept for check writing purposes.

The State offered evidence in the form of validation reports, alleged counterfeit deposit slips, and First Union Bank CAP account statements to show that defendant validated deposits that the State alleged were never deposited into J.T. Enterprises, Inc.'s account at First Union Bank. Mr. Tart discovered that certain deposits that were supposed to have been made, according to the alleged counterfeit deposit receipts and validation sheets, were never made, when a check bounced on the J.T. Enterprises, Inc. account and when he reviewed bank statements which failed to show some deposits for which he had alleged counterfeit deposit receipts. Mr. Tart testified that when he reviewed the bank statements, he noticed that he was missing deposits for $958.45, $645.87, $2,128.65, $1,288.24, $933.17, and $936.02. These cash amounts were supposed

STATE v. FRIERSON

[153 N.C. App. 242 (2002)]

to have been deposited on 30 August 1999, 19 September 1999, 25 September 1999, 8 October 1999, 12 October 1999, and 16 October 1999, respectively.

Angie Barnett ("Ms. Barnett"), a commercial teller at First Union Bank where the McDonald's deposits were made, recognized defendant at trial since he was in the bank on a daily basis to make deposits for McDonald's. She testified that on 18 October 1999, defendant entered the bank, broke into her line, looked fidgety and nervous, handed her a folded deposit slip and asked her to drop it in the drop box, where the deposit receipts were kept for deposits made after the bank had closed. Later that day, Ms. Barnett inspected the folded deposit slip dated 16 October 1999 for $936.02 and noticed that this deposit slip did not look like other deposit slips used by First Union— the boldness of the print of the stamp was different and it was torn instead of perforated.

The defense presented evidence that other employees besides defendant would travel to the bank and make deposits for the restaurant. Defendant testified that occasionally Mike Teeple, the operations manager, would make deposits, call defendant at the restaurant, and tell him to validate the deposit when defendant had not seen the receipt from the bank.

Defendant was charged in a true bill of indictment with embezzlement. On 28 March 2001, a jury found him guilty as charged. Defendant appeals from the judgment entered upon the verdict.

Defendant contends the trial court erred in admitting into evidence the McDonald's franchise's deposit slips (both allegedly counterfeit and valid), validation reports, and First Union CAP account statements under the business records exception to the hearsay rule because the State failed to lay a proper foundation for the records' admission. For the following reasons, we conclude that these exhibits were either offered for a non-hearsay purpose or were properly admitted under the business records exception to the hearsay rule after the State laid a proper foundation for their admission.

At the outset, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2001). "If a statement is offered for any other purpose, it is not hearsay and is admissible." *State v. Dickens*, 346 N.C. 26, 46, 484 S.E.2d 553, 564 (1997). Hearsay is inadmissible unless it

STATE v. FRIERSON

[153 N.C. App. 242 (2002)]

falls within a recognized exception to the hearsay rule. *State v. Parker*, 140 N.C. App. 169, 539 S.E.2d 656 (2000), *appeal dismissed and disc. review denied*, 353 N.C. 394, 547 S.E.2d 37, *cert. denied*, 532 U.S. 1032, 149 L. Ed. 2d 777 (2001).

Business records are admissible as an exception to the hearsay rule if "made in the regular course of business, at or near the time of the transaction involved, and . . . authenticated by a witness who is familiar with them and the system under which they were made . . . ." *State v. Galloway*, 304 N.C. 485, 492, 284 S.E.2d 509, 514 (1981). It is unnecessary for the witness who authenticates the records to be the person who made them. *State v. Wilson*, 313 N.C. 516, 330 S.E.2d 450 (1985). Our Supreme Court has stated that "if the records themselves show that they were made at or near the time of the transaction in question, the authenticating witness need not testify from personal knowledge that they were made at that time." *Id.* at 533, 330 S.E.2d at 462.

In the case *sub judice*, we initially note that the alleged counterfeit deposit slips were offered to show that they existed so that the jury could consider them as circumstantial evidence in determining whether defendant embezzled from his employer and concealed it by falsifying deposit records. A statement is not hearsay where it is only offered to show that the statement was made, and not to prove the truth of the statement. *State v. Mitchell*, 135 N.C. App. 617, 620, 522 S.E.2d 94, 95-96 (1999). Therefore, the alleged counterfeit deposit slips do not constitute hearsay. Because we conclude the alleged counterfeit deposit slips were offered for a non-hearsay purpose, we need not address whether the State laid an adequate foundation for their admission under the business records exception to the hearsay rule.

The valid deposit slips were offered into evidence for the purpose of comparing them with the alleged counterfeit deposit slips in order to show that the latter were in fact fake. Since the valid deposit slips were offered for their truth, they are hearsay evidence. Mr. Tart, owner of the McDonald's in question and familiar with the records and the franchise's system of filling out deposit slips, testified that the deposit slips were filled out at the end of each work shift and usually took place three times a day. Mr. Tart further testified that the deposit slips were made and kept in the ordinary course of business. These records were dated and therefore it was unnecessary for a witness to testify from personal knowledge that they were made at or near the time of the transaction in question. *See Wilson*, 313 N.C. 516, 330

S.E.2d 450. We conclude the State laid an adequate foundation for the deposit slips and the trial court did not err in admitting them.

We now turn to the admission of the validation reports. The validation reports constitute hearsay since one of the purposes for which they were offered was to identify the "preparer" (person who prepared the deposit), "depositor" (person who carried the deposit to the bank), and "validator" (person who confirmed that the cash was actually deposited into the bank). Therefore, the validation reports were being offered to prove the truth of the matters asserted.

It is undisputed that the validation reports would fall under the business records exception to the hearsay rule. N.C. Gen. Stat. § 8C-1, Rule 803(6) (2001). However, defendant argues the State failed to lay a proper foundation for these records. We disagree.

In the instant case, Mr. Tart testified that the validation reports were made in the ordinary course of business and described in detail the system in which the validation reports are prepared, including the people who are allowed to prepare such reports. Defendant asserts that since Mr. Tart did not testify as to when the records were made, the validation reports were improperly admitted. However, the records in question have dates listed showing that the records were created at or near the time of the transactions in question and therefore were self-authenticating as to the time at which they were made. *See Wilson*, 313 N.C. 516, 330 S.E.2d 450. There was evidence that the validation reports were made and kept in the ordinary course of business, were authenticated by a witness who was familiar with them and the system in which they were made, and the records were created at or near the time of the transactions involved. Therefore, the State laid a proper foundation for these records and the trial court accordingly, did not err in admitting them.

Defendant finally assigns error to the trial court's admission into evidence the McDonald's First Union Bank CAP account statements because defendant claims the State failed to lay a proper foundation for their admission. The bank statements were offered into evidence for the purpose of showing the absence of some of the purported deposits and to show the true status of the company's deposits. Thus, these bank statements were offered for the truth of the matters asserted and therefore, constitute hearsay. The State used Ms. Louise Joyce ("Ms. Joyce"), an operations consultant with thirty-two years of experience with First Union Bank, to lay a foundation. Ms. Joyce testified that as an operations consultant, she was familiar with how the

record-keeping system at First Union works and that the First Union CAP account statements were made and kept in the ordinary course of business. She further testified that the statements being offered into evidence were made or printed 31 August 1999, 30 September 1999, and 31 October 1999. Thus, we conclude that a proper foundation was laid and these bank statements were properly admitted.

Because defendant offers no argument in support of his remaining assignments of error, they are deemed abandoned. N.C.R. App. P. 28(a), 28(b)(6).

No error.

Judges GREENE and TIMMONS-GOODSON concur.