CALABRIA, Judge.
Where defendant, having been advised of his Miranda rights and without being asked, gave a voluntary statement to law enforcement officers, the trial court did not err in denying his motion to suppress. Where defendant failed to show that absent an officer's testimony on gangs the jury would probably have reached a different verdict, the trial court did not commit plain error in admitting that testimony. Where the evidence, taken in the light most favorable to the State, supported a determination that defendant aided in the crime, the trial court did not err in denying defendant's motion to dismiss. We find no error or plain error.
I. Factual and Procedural Background
On 27 July 2016, shortly after 9:00 p.m., two masked black men entered a restaurant across from the Jacksonville mall. Both men were holding firearms. The "tall, skinny" man pointed his firearm at Mary Kathleen Pasion ("Pasion"), an employee, and demanded money from the cash register. The tall man saw Pasion's Kanken brand backpack, and told her to put the money into the Kanken bag, which she did. The two men then left immediately. Pasion and her coworker, Perla Hawk ("Hawk"), contacted law enforcement, and Officer Gary Senters ("Officer Senters"), an officer with the Jacksonville Police Department ("JPD"), responded.
Officer Senters was told to be on the lookout for the two men, and was given a description of the backpack. After ten minutes canvassing the nearby area on foot, Officer Senters saw a "skinny black male" holding a backpack, approaching a group of people at the end of a breezeway. When the man saw Officer Senters, he fled with the backpack, and Officer Senters chased him; somewhere along the way, the man discarded the backpack. Pasion's Kanken backpack was subsequently found a few feet from where the man was apprehended. It contained a BB gun, a 9mm handgun, a clear plastic trash bag liner, a BB pellet magazine, and two bandanas. Officer Senters identified it as the bag the man was holding.
The man apprehended was identified as Trejuan White ("defendant"). Defendant was indicted for assault with a deadly weapon, carrying a concealed gun, and felony possession of stolen goods. At some point, defendant was additionally charged with robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon, and prior to trial, the State abandoned the assault charge.
After defendant was apprehended by law enforcement, he was advised of his Miranda rights, and exercised his right to remain silent and his right to counsel. While defendant was in custody, law enforcement officers obtained a search warrant to perform a buccal swab of defendant's DNA. During the buccal swab, defendant made a statement to law enforcement officers, conceding that the gun used in the robbery was his. Prior to trial, defense counsel moved to suppress this post-Miranda statement. The trial court declined to rule on it at the time. Subsequently, however, the trial court held that the statement was admissible.
At the close of the State's evidence, defendant moved to dismiss the charges of robbery, conspiracy to commit robbery, and possession of stolen property for insufficiency of the evidence. The trial court denied this motion. Defendant elected not to present evidence, and renewed the motion to dismiss, which the trial court again denied. However, during the charge conference, the State conceded that it could not identify defendant as one of the robbers, and the trial court dismissed the charge of conspiracy to commit robbery, noting that the evidence supported a theory of aiding and abetting, not conspiracy.
The jury returned verdicts finding defendant guilty of felony robbery with a dangerous weapon, misdemeanor carrying a concealed weapon, and misdemeanor possession of stolen goods. The trial court arrested judgment on the verdict of possession of stolen goods, and consolidated the verdicts of robbery and carrying a concealed weapon for judgment. The court sentenced defendant to a minimum of 51 months and a maximum of 74 months in the custody of the North Carolina Department of Adult Correction.
Defendant appeals.
II. Motion to Suppress
In his first argument, defendant contends that the trial court erred in denying defendant's motion to suppress his post-Miranda statements to police. We disagree.
A. Standard of Review
Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Cooke , 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "The trial court's conclusions of law ... are fully reviewable on appeal." State v. Hughes , 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).
B. Analysis
In a pre-trial motion, defendant moved to suppress his post-Miranda statement to law enforcement, given during a buccal swab DNA test. The trial court declined to rule on this motion at the time. Subsequently, the State elicited the testimony of Detective Courtney Martin ("Det. Martin"), to whom defendant gave the post-Miranda statement. When Det. Martin began to testify with regard to the buccal swab, the jury was dismissed, and the parties conducted voir dire of Det. Martin.
On voir dire, Det. Martin testified that on 27 July 2016, at approximately 11 p.m., she spoke with defendant, but did not interview him. She testified that she read him his Miranda rights, and he asked for an attorney. At that time, he made no statements. On 4 August 2016, law enforcement officers obtained a search warrant to perform a buccal swab of defendant's DNA. Det. Martin executed the buccal swab the same day. She went to the jail, and informed defendant that he was going to be taken to a booking room to obtain the buccal swab. She then read him the search warrant authorizing the swab. Defendant asked to speak with her, but she informed him that she could not speak with him without an attorney present, unless he waived his rights. He declined to waive his rights, so she informed him that she could not speak with him. At which point, defendant informed Det. Martin several times, "I didn't do it but it was my gun." The trial court subsequently ruled that there was "no formal interrogation, interview or questioning" by Det. Martin, and that therefore defendant's statement was admissible. The jury was returned to the courtroom, and Det. Martin testified that defendant told her, "I didn't do it but it was my gun."
Defendant contends that the buccal swab was in fact an interview, and "accusatory in every way, shape, and form[.]" He argues that Det. Martin's actions constituted "the functional equivalent of an interrogation[.]"
Our Supreme Court has held, pursuant to Miranda , that "during a custodial interrogation, if the accused invokes his right to counsel, the interrogation must cease and cannot be resumed without an attorney being present unless the accused himself initiates further communication, exchanges, or conversations with the police. " State v. Golphin , 352 N.C. 364, 406, 533 S.E.2d 168, 199 (2000) (citations and quotation marks omitted). The term "interrogation" includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id . (citations and quotation marks omitted).
Even assuming arguendo that defendant properly raised a Miranda argument, however, his argument fails. After Det. Martin's voir dire, the trial court entered its findings of fact. Specifically, the trial court found that:
[Det. Martin] had personal knowledge that [defendant] had invoked his Miranda rights and when he spoke to her when she was attempting to obtain a buccal swab, based on the direction of the search warrant, he then volunteered statements; to her recollection, several, at least three to her recollection, the substance of which, "I did not do it but it was my gun," quote, close-quotes. That statement in and of itself was not in direct response in any attempt by this officer to reengage or re-interview this Defendant without him first having been advised of this right to Miranda, then told that he would have to be advised and waive those rights before she could interview him and, in response to the execution of the search warrant, the search warrant perhaps made statements for trouble cause in writing to sufficiently be adopted by Magistrate Riggs and signed off on by Magistrate Riggs but the presentation of this search warrant was not-interrogation was not an interview, but was an attempt to obtain a DNA sample and the statements of the Defendant at the time, although he was in custody and had previously been Mirandized, are made of his own accord, unsolicited and not in direct response to any questions that would have been allegedly made by arguments by Counsel for the Defendant in the form of the search warrant. Search warrant is not anything other than a document authorizing said law enforcement agency to obtain a buccal swab.
The trial court specifically found that "there was no formal interrogation, interview, or questioning by this officer." Pursuant to our standard of review, we hold that these findings were supported by competent evidence at trial, and are therefore binding on this Court. Our review is therefore limited to whether the court's conclusion of law-that defendant's statement was admissible-was supported by the findings of fact.
What defendant alleges to be an interrogation was in fact a search. Det. Martin's part in the interaction consisted of reading a search warrant aloud to defendant. Reading a search warrant for a DNA swab is not "words or actions ... reasonably likely to elicit an incriminating response from the suspect." Accordingly, the trial court's conclusion that defendant's voluntary statement was admissible is supported by the court's factual determination that no interrogation occurred, and that defendant's statement was voluntarily offered. We hold that the trial court therefore did not err in denying defendant's motion to suppress.
III. Admission of Testimony
In his second argument, defendant contends that the trial court committed plain error in permitting the State to introduce testimony to suggest defendant's involvement with a gang. We disagree.
A. Standard of Review
"In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4) ; see also State v. Goss , 361 N.C. 610, 622, 651 S.E.2d 867, 875 (2007), cert. denied , 555 U.S. 835, 172 L.Ed. 2d 58 (2008).
"Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." State v. Jordan , 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).
B. Analysis
During her testimony, prior to speaking on the issue of defendant's post-Miranda statement, Det. Martin was asked about her professional background. She was asked about her experience at JPD, her education background, and her detective training. During her testimony, she mentioned that she "attended the North Carolina gang conference[,]" a 40-hour conference specifically dealing with "gangs and intelligence on gangs." The State then asked Det. Martin about her training at the conference, as well as the definition of a gang. During her response, defendant raised a general objection. The State clarified that it was "[j]ust asking about her experience," and the trial court overruled the objection. The State then inquired further about Det. Martin's knowledge of gangs.
On appeal, defendant contends that this testimony was irrelevant and prejudicial. Defendant concedes, however, that aside from this general objection, defendant raised no objection to Det. Martin's testimony on gangs. Defendant further concedes, and we note, that "a general objection, if overruled, is ordinarily not effective on appeal." State v. Parker , 140 N.C. App. 169, 183, 539 S.E.2d 656, 665 (2000) (quoting State v. Hamilton, 77 N.C. App. 506, 509, 335 S.E.2d 506, 508 (1985) ). Accordingly, we hold that this objection was not properly preserved, and review only for plain error.
Det. Martin testified primarily on four subjects: First, on gangs generally and gangs in Jacksonville specifically; second, on the video footage taken from a nearby Firehouse Sub shop on the night of the robbery; third, on defendant's post-Miranda statement; and fourth, on her attempt to get certain pieces of evidence tested for DNA.
On review of the transcript, none of Det. Martin's testimony concerning gangs addressed defendant directly or by reference. Her testimony concerning gang activity and gang-related robberies in Jacksonville clearly implied that this was a gang-related offense, but no evidence was presented to support that theory. Nor did any evidence suggest that defendant was involved in a gang. For example, Det. Martin testified that some people "prove themselves worthy" of membership in a gang by "commit[ting] an assault on a person or a robbery of a particular business[,]" but she did not testify that defendant had done so, or that this was his motivation for doing so. It is therefore clear that this evidence was not relevant to the question of defendant's guilt.
Det. Martin's gang-related testimony seemed to suggest that this was a gang-related crime, that defendant was a member of a gang, and that defendant participated in this crime to secure his gang membership. It is clear that, aside from these implications, Det. Martin's testimony was not relevant to the issue of defendant's involvement in the crime. However, pursuant to plain error review, the burden is on defendant to show that the alleged error prejudiced him; that is, absent the error, the jury "probably would have reached a different result." It is insufficient to allege that Det. Martin's testimony might have had an impact; defendant must show that, absent this testimony, the jury probably would have found him not guilty. Given the other evidence-the stolen backpack, the firearms in the backpack, and defendant's own confession that his gun was used in the robbery-we cannot say that the jury probably would have reached a different verdict. Accordingly, we hold that the trial court did not commit plain error in admitting Dr. Martin's testimony.
IV. Motion to Dismiss
In his third argument, defendant contends that the trial court erred in denying defendant's motion to dismiss the charge of robbery with a dangerous weapon for insufficiency of the evidence. We disagree.
A. Standard of Review
"This Court reviews the trial court's denial of a motion to dismiss de novo ." State v. Smith , 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).
" 'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " State v. Fritsch , 351 N.C. 373, 378, 526 S.E.2d 451, 455 (quoting State v. Barnes , 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993) ), cert. denied , 531 U.S. 890, 148 L.Ed. 2d 150 (2000).
"In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." State v. Rose , 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), cert. denied , 515 U.S. 1135, 132 L.Ed. 2d 818 (1995).
B. Analysis
Defendant contends that the State failed to present sufficient evidence of the offense of robbery with a dangerous weapon. Our general statutes provide that:
Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business, residence or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a Class D felony.
N.C. Gen. Stat. § 14-87(a) (2017). The State conceded that defendant was not one of the two men who committed the robbery. Its argument was therefore premised upon a theory of aiding and abetting. To show aiding and abetting, the State must show "(1) that the crime was committed by another; (2) that the defendant knowingly advised, instigated, encouraged, procured, or aided the other person; and (3) that the defendant's actions or statements caused or contributed to the commission of the crime by the other person." State v. Bond , 345 N.C. 1, 24, 478 S.E.2d 163, 175 (1996).
On appeal, the State points to numerous pieces of evidence which, viewed in the light most favorable to the State, suggest defendant's involvement in the robbery. For example, defendant's mere possession of the backpack, alone, is insufficient to raise a presumption of guilt. However, the doctrine of recent possession renders it relevant to the issue. "The doctrine of recent possession is a rule of law creating the presumption that a person in possession of recently stolen property is guilty of its wrongful taking and of the unlawful entry associated with that taking." State v. McQueen , 165 N.C. App. 454, 459, 598 S.E.2d 672, 676 (2004). "For the doctrine of recent possession to apply, the State must show: (1) the property was stolen, (2) defendant had possession of the property, subject to his control and disposition to the exclusion of others, and (3) the possession was sufficiently recent after the property was stolen, as mere possession of stolen property is insufficient to raise a presumption of guilt." Id . at 460, 598 S.E.2d at 676-77. In the instant case, defendant's possession of the stolen backpack came minutes after the robbery itself. This supports an inference that defendant was associated with the robbery.
There was also the fact of defendant's statement that his gun was used in the robbery. This is certainly incriminating, as is his possession of the backpack. Taking this evidence in the light most favorable to the State, and giving the State the benefit of every reasonable inference, a jury could reasonably conclude that defendant knowingly aided in the robbery. We therefore hold that the trial court did not err in denying defendant's motion to dismiss.
V. Conclusion
Defendant, despite being in custody, had been advised of his Miranda rights. Det. Martin reading a search warrant to him did not rise to the level of an interrogation, and his statement to her was voluntary. The trial court did not err in denying defendant's motion to suppress.
Det. Martin's testimony regarding gang activity in Jacksonville was not relevant. However, defendant has failed to show that, absent the admission of this evidence, the jury would probably have reached a different verdict. The trial court therefore did not commit plain error in admitting it.
The State conceded that there was no evidence of defendant's actual involvement in the robbery, and thus proceeded under a theory of aiding and abetting. However, between defendant's possession of the backpack soon after the crime was committed, and his admission to law enforcement officers that his gun was used, there was substantial evidence of defendant having aided in the crime. Accordingly, the trial court did not err in denying defendant's motion to dismiss.
NO ERROR.
Report per Rule 30(e).
Chief Judge McGEE and Judge DIETZ concur.